UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN BROWN and KAREN BROWN, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | ) Case No.: 1:21-cv-02597 |
| v. | )<br>) Judge Charles R. Norgle |
| AUTO-OWNERS INSURANCE COMPANY, | )<br>)<br>) |
| Defendant. | )<br>) |

**FIRST AMENDED CLASS ACTION COMPLAINT WITH JURY DEMAND**

COME NOW Plaintiffs, John Brown and Karen Brown (the "Browns" or "Plaintiffs"), individually and on behalf of all others similarly situated, and for their First Amended Class Action Complaint[1] against Auto-Owners Insurance Company ("Auto-Owners" or "Defendant") state and allege the following:

**PARTIES, RESIDENCY, JURISDICTION AND VENUE**

1.  Plaintiffs John and Karen Brown are residents and citizens of Lake County, Illinois.

2.  Defendant Auto-Owners is an insurance company domiciled in the State of Michigan and headquartered in Lansing, Michigan. Auto-Owners is authorized to sell property insurance policies in the state of Illinois.

---

[1] Plaintiffs file this First Amended Complaint in accordance with the Court's instruction in its Order dated June 1, 2022, which ruled that "Plaintiffs lack standing as class representatives to assert claims on behalf of out-of-state policy holders" and dismissed the "out-of-state claims." Dkt. 29, PageID 212 (the "Order"). The Order further directed Plaintiffs to file an amended Complaint "consistent with this order." *Id*. at PageID 209. This First Amended Complaint is substantively identical to the original Complaint, with the exception of the omission of allegations concerning the "out of state claims" dismissed by the Court. Plaintiffs reserve all appellate rights associated with the Order, and do not intend to waive any rights by the filing of this First Amended Complaint "consistent with" the Order at the instruction of the Court.

3. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2). There are more than 100 members in the proposed class, at least one member of the proposed class has state citizenship that is different than Defendant's, and the matter in controversy exceeds $5,000,000, exclusive or interest and costs.

4. This Court has personal jurisdiction over Defendant because it has availed itself of the privilege of conducting business and issuing insurance contracts covering structures in the State of Illinois.

5. Venue is proper in this forum pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in Winthrop Harbor, Illinois, which is situated within the Northern District of Illinois, Eastern Division. Venue is also proper pursuant to 28 U.S.C. §1391(c) because Defendant is a corporation deemed to reside in this District.

**FACTS**

**A. The Property Insurance Policy and Casualty Loss**

6. Auto-Owners is a national insurer that sells property insurance coverage for, *inter alia*, homes, mobile homes and buildings in 26 states, including Illinois,.

7. This lawsuit only concerns property coverage for buildings, and not personal contents, such as furniture and clothes.

8. The Auto-Owners property insurance forms sold in Illinois are materially identical as it relates to the contractual dispute set forth herein.

9. The Browns were insured pursuant to an insurance contract whereby Auto-Owners agreed to insure, *inter alia,* the Browns' home located at 207 Oakdale Ave., Winthrop Harbor,

2

Illinois (the "Insured Property") against property damage, bearing Policy No. 43-776-549-02 (the "Brown Policy").

10. The Browns paid Auto-Owners premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

11. The Brown Policy provided insurance coverage for accidental direct physical loss to the dwelling and other structures located on the Insured Property, except as specifically excluded or limited by the Brown Policy.

12. On or about August 23, 2020, the Insured Property suffered fire damage covered by the Brown Policy.

13. The Browns timely notified Auto-Owners of their loss and made a claim against the Brown Policy.

14. Auto-Owners determined the loss to the Insured Property was covered by the terms of the Brown Policy.

15. Auto-Owners calculates its actual cash value payment obligations to its policyholders for structural damage loss by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), and then Auto-Owners subtracts the estimated depreciation.

16. The Brown Policy, and the other property forms that are the subject of this lawsuit, do not permit the withholding of labor as depreciation as described below. In contrast with the Brown Policy, certain policies of insurance (including forms from Auto-Owners itself) expressly allow for the depreciation of "labor" as described herein. The type of form or endorsement will be referred to herein as a "labor depreciation permissive form." The Brown Policy does not contain a labor depreciation permissive form.

### B. Auto-Owners' Calculation of the Browns' ACV Payment

17. In adjusting the Browns' claim, Auto-Owners affirmatively and unilaterally chose to use a "replacement cost less depreciation" methodology to calculate the loss and make its ACV payment.

18. Soon after the August 23, 2020 loss, Auto-Owners sent an adjuster to inspect the damage to the Insured Property and estimate the ACV associated with the fire loss. Auto-Owners uses commercially-available computer software to estimate RCV, depreciation, and ACV. The software used by Auto-Owners to calculate the payment to the Browns is called Xactimate®.

19. As set forth in a written Xactimate® estimate provided to the Browns by Auto-Owners, Auto-Owners' adjuster determined that the Browns had suffered a covered loss in the amount of $32,616.18 (the RCV) to their home. The estimate included the cost of materials and labor required to complete the repairs. A copy of the Xactimate® estimate given to the Browns is attached as **Exhibit A**.

20. In calculating its ACV payment obligations to the Browns, Auto-Owners subtracted from the RCV estimate the $500.00 deductible provided for in the Brown Policy plus an additional $14,699.20 for depreciation. This resulted in a net ACV payment of $17,416.98.

21. The Browns were underpaid on their ACV claim as more fully described below.

### C. Auto-Owners' Practice Of Withholding Labor As Depreciation

22. When it calculated the ACV benefits owed to the Browns pursuant to the Brown Policy, Auto-Owners withheld costs for both materials and the labor required to repair or replace the Browns' home as depreciation, even though labor does not depreciate in value over time. Auto-Owners withheld labor costs throughout its ACV calculations as depreciation. Auto-Owners also

withheld labor costs as depreciation for other work necessary to repair and replace the Browns' property.

23. Like all property insurance claims estimating software, the specific commercial claims estimating software used by Auto-Owners allows for the depreciation of materials only or the depreciation of both material and labor in its depreciation option setting preferences.

24. In this pleading, whenever reference is made to withholding "labor" as depreciation, "labor" means intangible non-materials, specifically including both the labor costs and the laborers' equipment costs and contractors/laborers' overhead and profit necessary to restore property to its condition immediately prior to the loss, as well as removal costs to remove damaged property, under commercial claims estimating software.

25. Auto-Owners' withholding of labor costs as depreciation associated with the repair or replacement of the Browns' property resulted in the Browns receiving payment for their losses in an amount less than they were entitled to receive under the Brown Policy. Auto-Owners breached its obligations under the Brown Policy by improperly withholding the cost of labor as depreciation.

26. Plaintiffs themselves cannot determine the precise amount of labor that has been withheld based only upon the written estimate provided. To determine the precise amount of labor withheld, it is necessary to have access to the commercial property estimating program at issue, as well as the electronic file associated with their estimate.

27. While an insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully withhold repair labor as depreciation under the Auto-Owners policy forms at issue. Auto-Owners' failure to pay the full

5

cost of the labor necessary to return the Insured Property back to its pre-loss condition left the Browns under-indemnified and underpaid for their loss.

28. Auto-Owners materially breached its duty to indemnify the Browns by withholding labor costs associated with repairing or replacing the Browns' property in its ACV payment as depreciation, thereby paying the Browns less than they were entitled to receive under the terms of the Brown Policy.

## AMOUNT IN CONTROVERSY

29. Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

30. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this lawsuit as a class action on behalf of themselves and on behalf of all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the proposed class herein is ascertainable.

31. The proposed class that Plaintiffs seek to represent is tentatively defined as follows:

> All Auto-Owners policyholders (or their lawful assignees) who made: (1) a structural damage claim for property located in Illinois; and (2) which resulted in an actual cash value payment during the class period from which non-material depreciation was withheld from the policyholder; or which should have resulted in an actual cash value payment but for the withholding of non-material depreciation causing the loss to drop below the applicable deductible, for the maximum limitations period as may be allowed by law.
>
> In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate® software or

similar depreciation option settings in competing commercial software programs.

The class excludes any claims for which the applicable limits of insurance have been exhausted by initial actual cash value payments.

The class also excludes any claims arising under labor depreciation permissive policy forms, *i.e.*, those forms and endorsements expressly permitting the "depreciation" of "labor" within the text of the policy form, unless the use of those forms violates Illinois law.

32. Plaintiffs reserve the right to amend the definition of the proposed class through discovery. The following persons are expressly excluded from the class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

33. Plaintiffs and members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the policy. Certain amounts initially withheld as labor may be later repaid to some policyholders with replacement cost provisions in their policies, if any. However, policyholders who have been subsequently repaid for initially withheld labor still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, statutory prejudgment interest on the amounts improperly withheld, for the time period of withholding.

34. The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believe that hundreds or thousands of people geographically dispersed across Illinois have been damaged by Auto-Owners' actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by Auto-Owners or from information readily available to Auto-Owners.

35. The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

36. Auto-Owners has acted on grounds generally applicable to the proposed class in that Auto-Owners has routinely withheld labor costs as described herein in its adjustment of property damage claims under its policies of insurance. It is reasonable to expect that Auto-Owners will continue to withhold labor to reduce the amount it pays to its insureds under these policies absent this lawsuit.

37. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

    a. Whether Auto-Owners' policy language allows it to withhold labor costs in its calculation of ACV payments;

    b. Whether Auto-Owners' policy language is ambiguous;

    c. Whether Auto-Owners' withholding of labor costs in its calculation of ACV payments breaches the insurance policies;

    d. Whether Auto-Owners has a custom and practice of withholding labor costs in its calculation of ACV payments;

    e. Whether Plaintiffs and members of the proposed class have been damaged as a result of Auto-Owners' withholding of labor costs in its calculation of ACV payments; and

    f. Whether Plaintiffs and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act.

38. Plaintiffs' claim is typical of the claims of the proposed class members, as they are all similarly affected by Auto-Owners' custom and practice concerning the withholding of labor. Further, Plaintiffs' claims are typical of the claims of the proposed class members because their claims arose from the same practices and course of conduct that give rise to the claims of the

8

members of the proposed class and are based on the same factual and legal theories. Plaintiffs are not different in any material respect from any other member of the proposed class.

39. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiffs' interests do not conflict with the interests of the proposed class they seek to represent. Plaintiffs have retained lawyers who are competent and experienced in class action and insurance litigation. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the members of the proposed class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the proposed class while recognizing the risks associated with litigation. Plaintiffs reserve the right to have unnamed class members join them in seeking to be a class representative.

40. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

41. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary

adjudication with consistent results and equal protection of the rights of Plaintiffs and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

42. Questions of law or fact common to Plaintiffs and members of the proposed class, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amount due to many individual members of the proposed class is likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by Auto-Owners' unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

43. Class certification is further warranted because Auto-Owners has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

44. Plaintiffs may seek, in the alternative, certification of issues classes.

45. Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

## COUNT I
## BREACH OF CONTRACT

46. Plaintiffs restate and incorporate by reference all preceding allegations.

47. Auto-Owners entered into policies of insurance with the Browns and members of the proposed class. These insurance policies govern the relationship between Auto-Owners and the Browns, and members of the proposed class, as well as the manner in which claims for covered losses are handled.

48. The policies of insurance between Auto-Owners, the Browns and the other members of the proposed class are binding contracts under Illinois, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

49. Auto-Owners drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation concerning the withholding of labor as depreciation from ACV payments for structural loss.

50. In order to receive or be eligible to receive ACV claim payments in the first instance, the Browns and the putative class members complied with all material provisions and performed all of their respective duties with regard to their insurance policy.

51. Auto-Owners breached its contractual duty to pay the Browns and members of the proposed class the ACV of their claims by unlawfully withholding labor costs as described herein.

52. Additionally, Auto-Owners breached the Brown Policy by failing and refusing to promptly pay the amounts individually owed to the Browns as required by the terms of the Brown Policy. As a result, the Browns have been damaged in the amount of the unpaid portion of their claim, including but not limited to the actual cash value of the damage to their dwelling.

53. Auto-Owners' actions in breaching its contractual obligations to the Browns and members of the proposed class benefitted and continue to benefit Auto-Owners. Likewise, Auto-Owners' actions damaged and continue to damage Plaintiffs and members of the proposed class.

54. Auto-Owners' actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiffs and members of the proposed class.

55. In light of the foregoing, Plaintiffs and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts Auto-Owners unlawfully withheld from their ACV payments, including prejudgment interest as may be allowed by law.

## COUNT II
## DECLARATORY JUDGMENT AND RELIEF

56. Plaintiffs restate and incorporate by reference all preceding allegations.

57. This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

58. A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

59. Plaintiffs and members of the proposed class have all complied with all relevant conditions precedent in their contracts.

60. Plaintiffs seek, individually and on behalf of the proposed class, a declaration that Auto-Owners' property insurance contracts prohibit the withholding of labor costs as described herein when adjusting losses under the methodology employed herein.

61. Plaintiffs further seek, individually and on behalf of the proposed class, any and all other relief available under the law arising out of a favorable declaration.

62. Plaintiffs and members of the proposed class have and will continue to suffer injuries.

## JURY DEMAND

63. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

1. Enter an order certifying this action as a class action, appointing Plaintiffs as the representatives of the class, and appointing Plaintiffs' attorneys as counsel for the class;

2. Enter a declaratory judgment, declaring that Auto-Owners' withholding of labor costs as depreciation is contrary to and breaches the insurance policy issued to the Browns and members of the class;

3. Enter a declaration, and any preliminary and permanent injunction and equitable relief against Auto-Owners and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein, as may be allowed by law;

4. Enter an order that Auto-Owners specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of its past and present practices complained of herein;

5. Award compensatory damages for all sums withheld as labor costs under the policy, plus prejudgment interest on all such sums, to Plaintiffs and members of the proposed class;

6. Award compensatory damages to Plaintiffs for all amounts to which they are entitled pursuant to the Brown Policy as a result of the subject loss;

7. Award costs, expenses, and disbursements incurred herein by Plaintiffs and members of the proposed class as may be allowed by law, including but not limited to amounts available under the common fund doctrine;

8. Pre- and Post-Judgment interest; and

9. Grant such further and additional relief as the Court deems necessary and proper.

Dated:  June 29, 2022  Respectfully submitted,

/s/ J. Brandon McWherter
J. BRANDON McWHERTER
(TN Bar #21600)
**McWHERTER SCOTT & BOBBITT, PLC**
341 Cool Springs Blvd., Suite 230
Franklin, TN  37067
(615) 354-1144
brandon@msb.law

ERIK D. PETERSON (KY Bar 93003)
**Mehr, Fairbanks & Peterson**
 **Trial Lawyers, PLLC**
201 West Short Street, Suite 800
Lexington, Kentucky 40507
Telephone:  859-225-3731
Facsimile:  859-225-3830
Email:   edp@austinmehr.com

Douglas J. Winters, #6311459
**The Winters Law Group, LLC**
190 Carondelet Plaza
Suite 1100
St. Louis, MO 63105
Tel: (314) 499-5200
Fax: (314) 499-5201
dwinters@winterslg.com

T. JOSEPH SNODGRASS
(MN Bar #231071)
**LARSON • KING, LLP**
30 E. 7th Street, Suite 2800
St. Paul, MN 55101
(651) 312-6500
jsnodgrass@larsonking.com

*Attorneys for Plaintiffs and Putative Class Representatives*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was forwarded this 29th day of June, 2022, to all attorneys of record via the Court's electronic filing system.

<em>/s/ J. Brandon McWherter</em>